**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RAYMOND A. UNDERWOOD; LINDA
SUE UNDERWOOD,
Plaintiffs-Appellants,

v.

FLUOR DANIEL, INCORPORATED; FLUOR
CORPORATION GROUP HEALTH PLAN;
FLUOR CORPORATION; FLUOR
CORPORATION GROUP HEALTH PLAN,
Plan Administrator,                                      No. 95-3036
Defendants-Appellees,

and

FLUOR DANIEL, INCORPORATED, Group
Health Plan; FLUOR DANIEL,
INCORPORATED, Group Health Plan
Claims Review Committee,
Individually and Collectively,
Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
G. Ross Anderson, Jr., District Judge.
(CA-95-42)

Argued: September 25, 1996

Decided: January 28, 1997

Before HALL and ERVIN, Circuit Judges, and HALLANAN,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded with instructions by unpublished per curiam opinion. Judge Hallanan wrote an opinion concurring in part and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Roy Franklin Harmon, III, HARMON LAW FIRM, P.A., Greenville, South Carolina, for Appellants. Kristofer Karl Strasser, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, L.L.P., Greenville, South Carolina, for Appellees. **ON BRIEF:** Julie M. Bondura, HARMON LAW FIRM, P.A., Greenville, South Carolina; T. Preston Reid, HOWARD, HOWARD, FRANCIS & REID, Greenville, South Carolina, for Appellants. Fred W. Suggs, Jr., OGLETREE, DEAKINS, NASH, SMOAK & STEWART, L.L.P., Greenville, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Raymond A. Underwood and his wife Linda appeal the order of the district court denying their motion, made pursuant to Fed. R. Civ. P. 59(e), to amend the court's entry of judgment on behalf of defendants Fluor Corporation, Fluor Daniel, Inc., and the Fluor Corporation Group Health Plan (hereinafter, collectively, "Fluor"), in the Underwoods' action for benefits, penalties, and injunctive relief under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1145.

Specifically, the Underwoods allege that Fluor wrongly refused to pay health insurance benefits due Mrs. Underwood under the Plan, and has failed to comply with the information and notice requirements

2

of ERISA and the COBRA[1] amendments thereto. The Underwoods contend that, as a result, Fluor has breached its fiduciary duties to administer the Plan "solely in the interest of the participants and beneficiaries," with "care, skill, prudence, and diligence," and "in accordance with the documents and instruments governing the plan[.]" 29 U.S.C.A. 1104(a)(1) (West 1985 & Supp. 1996). Moreover, according to the Underwoods, Fluor's non-compliance with the information and notice requirements has rendered it liable for the statutory penalty of up to $100 per day for each violation. See 29 U.S.C. § 1132(c)(1) (West Supp. 1996).

Following a bench trial, the district court entered judgment for Fluor on all of the Underwoods' claims, and it denied the Underwoods' subsequent motion to alter or amend the judgment. We affirm the judgment of the district court with respect to its denial of benefits and injunctive relief, and with respect to its excusing Fluor from the statutory penalty for not furnishing the Underwoods with requested plan documents and other information.

We hold, however, that the district court abused its discretion by not imposing the statutory penalty for Fluor's failure to provide Mrs. Underwood with notice of her rights upon the impending termination of the health insurance benefits to which she had been entitled under the Plan. We therefore reverse that aspect of the judgment and remand for the district court to impose the appropriate penalty.

I.

On June 29, 1992, Raymond Underwood was laid off from his engineering job with Fluor Daniel, Inc., in Greenville, South Carolina. Upon reporting for work that day, Mr. Underwood was escorted to the personnel department and given a printed notice explaining that, although he was being separated from his employment, he could elect to continue his and/or his wife's health insurance under the company's health benefits plan.[2] Mr. Underwood decided to postpone his

_____

[1] Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-68.
[2] Fluor Daniel, Inc., is a subsidiary of Fluor Corporation, and both are sponsors of the Fluor Corporation Group Health Plan. Fluor Corporation

3

decision. He testified that he took the notice home and put it in his safe, never showing it to his wife.

Linda Underwood had been suffering from a chronic intestinal ailment since the first of the year; indeed, she had been taken to the hospital the very morning that her husband lost his job. She was released the next day, however, and Mr. Underwood quickly found employment with Sandwell Engineering in Atlanta. His new job was scheduled to begin on August 24, 1992, within the 60-day election period accorded him by the COBRA amendments. See note 2, supra. Mr. Underwood testified that he understood that there was no danger of any gap in his health insurance coverage; he also stated his belief that, in the event that he needed health benefits prior to starting work with Sandwell, he could simply elect to continue his coverage with Fluor Daniel and pay the back premiums.

Mrs. Underwood's coverage, however, was another matter; she would not be covered under Sandwell's insurance for any medical expenses related to her preexisting intestinal condition. The Underwoods testified that, as a result, they believed it necessary for her to obtain a continuation of the coverage provided by Fluor.

_____

is the Plan Administrator. As a participant in the Plan, Mr. Underwood was entitled to hospitalization coverage and other insurance benefits; Mrs. Underwood, as her husband's beneficiary under the Plan, see 29 U.S.C. § 1002(8), qualified for the same benefits. The Plan is self-insured; claims against it are submitted to a third-party administrator for processing and payment. The Plan then reimburses the claims administrator.

The notice provided to Mr. Underwood explained that, under the COBRA amendments, he could, by paying the entire premium due, continue health coverage for himself, his wife, or both for up to 18 months after his termination. See 29 U.S.C. § 1162(2). The notice quoted monthly premiums based on whether one or two persons remained insured; it clearly specified that the premiums were due at the beginning of each month and that premium notices would not be mailed. The notice also informed Mr. Underwood that premium payments would be considered timely if received within 30 days of the date due, and that he had 60 days to decide whether to continue coverage. See 29 U.S.C. §§ 1162(2)(C), 1165(1).

4

Fluor Daniel maintains that, during the first week of July 1992, it mailed a duplicate "COBRA notice" to Mr. Underwood, along with an election form for him to sign and return in the event that he decided to continue coverage. The Underwoods assert that they never received this mailing.[3] In any case, while out of town in early August, Mr. Underwood telephoned his wife and instructed her to send a check to Fluor Daniel to continue her coverage.

Mrs. Underwood testified that she phoned Fluor Daniel's benefits department and was told by an unnamed employee to remit $679.36. The amount quoted was exactly twice the monthly rate for joint coverage, as listed on the notice handed to her husband upon his termination.[4] Mrs. Underwood mailed a check for the quoted amount, dated August 10, 1992, to Fluor Daniel. On the check's memorandum line, Mrs. Underwood wrote "July & Aug. 92." A few days thereafter, Mr. Underwood submitted a completed election form to Fluor Daniel, see note 3, supra, that effectively continued coverage for both him and his wife.[5]

---

[3] There is reason to believe the Underwoods' assertion. The signed election form that Mr. Underwood eventually submitted was imprinted with the Underwoods' old RFD address, which had been changed to a street designation several years previously. Mr. Underwood testified that he obtained this election form in person from Fluor Daniel's benefits department in mid-August 1992.

[4] Mrs. Underwood apparently did not effectively communicate any desire on her part to continue coverage only for herself. Absent continuation, the Underwoods' coverage would have expired on June 30, 1992. Hence, upon remittance of the quoted amount, the couple's joint coverage was continued through August 31, 1992. In order to extend the coverage beyond that date, the Underwoods would have had to pay additional premiums no later than September 30, 1992. See note 2, supra.

[5] Mr. Underwood's election of joint coverage, like his wife's remittance of the joint premium, seems to contradict the couple's stated desire to continue coverage for Mrs. Underwood only. If, perhaps, Mr. Underwood was confused, his confusion can easily be traced to the election form itself, which was poorly conceived. The form quoted only the joint premium rate, and it failed to list the entire range of available options; its designer apparently did not contemplate that an employee might elect to continue coverage only for a spouse or other dependent.

5

September came and went without any further payments by the Underwoods to Fluor Daniel. Mrs. Underwood continued to require medical assistance for her condition, undergoing outpatient procedures in October and November. Her situation ultimately worsened, requiring her to enter the hospital on January 2, 1993.

The following day, Mr. Underwood was told that there was a "problem" certifying his wife's admission; he contacted Fluor Daniel, which informed him that the Underwoods' insurance had been cancelled as of August 31, 1992, for non-payment of premiums. See note 4, supra.[6] By telephoning Fluor's headquarters in California, Mr. Underwood was able to get his wife's admission certified by the Plan's pre-certification agent, and she received the surgery that she needed on January 11. In the end, however, Fluor rebuffed the Underwoods' repeated attempts to tender payment for back premiums, and it steadfastly refused to pay approximately $400,000 in medical expenses stemming from Mrs. Underwood's hospitalization and surgery.

The Underwoods filed suit in the district court, seeking to impose liability on Fluor for the costs of Mrs. Underwood's care. The complaint accused Fluor of having violated specific provisions of ERISA and its COBRA amendments by not giving the Underwoods sufficient notice of their rights to continued health insurance coverage under the Plan, and by refusing to provide Plan documents and other information they had requested. It was further alleged that Fluor's failure to comply with ERISA's notice and information requirements, along with its denial of Mrs. Underwood's insurance claims, constituted breaches of its fiduciary duties to the Underwoods.

The parties proceeded to trial before the district court, which, on August 17, 1995, entered judgment for Fluor on all of the Underwoods' claims. In so ruling, the court found that

_____

[6] Notwithstanding the supposed cessation of coverage, bills for the outpatient procedures performed on Mrs. Underwood in October and November 1992 were submitted to and paid by the third-party claims administrator. Fluor has not sought reimbursement from the Underwoods for these expenses.

> Mrs. Underwood knew she had a right to continued insurance coverage when her husband was terminated from Fluor Daniel. She knew that her husband elected COBRA coverage for her and that the premium amount had to be paid. She also knew the premium amount due. She knew the period covered by the premium amount because she wrote on her check that it was for July and August of 1992. . . . It is not necessary to reach the plaintiffs' complaints regarding notice because they elected and received continued insurance coverage under COBRA. . . . Fluor Daniel terminated the plaintiffs' coverage because the plaintiffs did not pay their premiums.

From the court's subsequent denial of their motion to amend its judgment, the Underwoods appeal.

II.

A.

The COBRA amendments require group health plan administrators to notify "any qualified beneficiary" of a plan participant of his right to temporarily continue his coverage upon the occurrence of certain "qualifying events" (including termination of the participant's employment) that would otherwise result in the beneficiary's loss of coverage. 29 U.S.C.A. §§ 1163(2), 1166(a)(4)(A) (West Supp. 1996). The participant's employer must inform the administrator of the qualifying event within 30 days of its occurrence; the administrator then has 14 more days to notify any beneficiaries and explain to them their rights. See §§ 1166(a)(2), (c). The statute plainly identifies plan beneficiaries as a discrete class entitled to certain rights apart from plan participants; we are, therefore, compelled to conclude that a plan administrator may not, merely by notifying participants of their rights, simultaneously fulfill its notice obligations to beneficiaries.

B.

Teresa Futrell, Fluor Daniel's benefits supervisor, admitted at trial that the company never individually notified Mrs. Underwood of her

rights under the COBRA amendments.**7** The Underwoods seize upon this admission, urging us to impose liability on Fluor under ERISA's penalty provision, 29 U.S.C. § 1132(c), which states, in pertinent part:

> Any administrator . . . who fails to meet the requirements of paragraph [(a)](4) of section 1166 of this title . . . with respect to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure . . . , and the court may in its discretion order such other relief as it deems proper.

29 U.S.C.A. § 1132(c)(1) (West Supp. 1996). According to the Underwoods, "proper" relief in this case would include having Fluor pay for Mrs. Underwood's medical expenses.

In considering the Underwoods' argument, we find it hard to fault the logic of the court below. At the outset, we cannot say that the district court clearly erred in concluding that Mrs. Underwood knew the amount of her monthly premium and when it was due: the check that Mrs. Underwood mailed to Fluor Daniel was made out for the precise amount of two months' premiums, and Mrs. Underwood had even noted thereon the specific months for which the premiums had been paid. Mrs. Underwood's actions were entirely consistent with those of a plan beneficiary who was fully aware of her rights and responsibilities under the COBRA amendments.**8**

---

**7** In 1993, Fluor amended its practice of addressing its notice mailings solely to Plan participants. Now, in cases involving married participants with spouse beneficiaries, it still mails out a single notification letter (apparently including a detailed question-and-answer pamphlet, enthusiastically entitled "Welcome to the Wonderful World of COBRA"), but it addresses the letter to both spouses. Fluor assures us that its new procedure comports with the statutory requirement. We express no opinion on the matter.

**8** We are aware that the evidence could be viewed as painting a very different picture. We might imagine that Mrs. Underwood, in light of her illness, was neither particularly willing nor fully able to take the initiative in ensuring that her Plan benefits continued uninterrupted. It is conceivable that Mrs. Underwood had never before paid for health insurance out

8

Under the district court's view of the evidence, Mrs. Underwood was aware of every fact necessary for her to continue her coverage under the Plan well beyond the time of her hospitalization and surgery. The notice provided Plan participants, had she received it, would have added nothing to her knowledge; indeed, we are constrained to point out that the Underwoods actually succeeded at the outset in continuing their coverage.

We conclude -- as did the district court -- that Mrs. Underwood's coverage lapsed solely because she and/or her husband simply neglected to pay the required insurance premiums; the corollary to our conclusion, of course, is that the Underwoods' coverage did not lapse as the result of any act or omission of Fluor. Inasmuch as Fluor's failure to provide Mrs. Underwood with the required notice of her COBRA rights did not cause the lapse in her coverage, it would be inequitable to hold it liable for the consequences of that lapse. Likewise, to the extent Fluor's inaction may have also been a breach of its fiduciary duty to Mrs. Underwood, the breach did not cause the lapse in coverage, and, therefore, Fluor cannot be held responsible.

III.

A.

On the other hand, the happenstance that Mrs. Underwood knew of her rights under the COBRA amendments did not absolve Fluor from its obligation to notify her of them; "knowledge" is not the equivalent of "notice," though the former may flow from the latter. Section 1132(c)(1), by its plain terms, accords the district court considerable

_____

of her own pocket, and, as a result, she did not fathom the enormous cost involved. She may well have, as she testified, simply filled out the check -- including the memorandum line -- in unquestioning accordance with the instructions of the benefits department, giving no thought to the meaning of the words and numbers that she recorded.

The district court could have taken the above view, but it was not required to. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) (citations omitted).

9

discretion to impose a penalty on any plan administrator that fails to comply with the notice provisions of ERISA or the COBRA amendments. Glocker v. W.R. Grace & Co., 974 F.2d 540, 544 (4th Cir. 1992).

This discretion, however, must necessarily be confined to a determination of whether any mitigating circumstances exist to excuse the administrator's inaction. Where, as here, the violation is clear and without excuse, a penalty should be imposed, regardless of whether the plaintiff has been prejudiced. See Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996) (prejudice not a prerequisite to imposing the statutory penalty). Were it otherwise, the law would not be applied with equal force to all, and justice would not be served.

B.

Moreover, we are of the opinion that the maximum penalty of $100 per day must, as a matter of law, be imposed in this case. Fluor Corporation and its several subsidiaries employ a multitude of people; Fluor's failure to comply with COBRA's notice-to beneficiaries provision from the amendments' enactment in 1986 until at least 1993, see note 7, supra, has potentially caused substantial harm.

In addition, because "[t]he purpose of [§ 1132(c)(1)] is not to compensate participants for injuries, but to punish noncompliance with ERISA," Faircloth v. Lundy Packing Co., 91 F.3d 648, 659 (4th Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3369 (U.S. Oct. 31, 1996) (No. 96-702), the amount of the penalty must be sufficient to deter the administrator from future misconduct. Although there is evidence to suggest that Fluor is now attempting to comply with COBRA's notice provisions, see note 7, supra, we are convinced that imposition of anything less than the maximum statutory penalty would fail to suffice as an adequate deterrent.

C.

Fluor Daniel was required to have informed the Plan Administrator of Mr. Underwood's termination within 30 days of its occurrence. Fluor Corporation (or Fluor Daniel, who appears to act as its parent

10

company's designee in such matters) then had 14 additional days in which to provide Mrs. Underwood with notice of her rights. See Section II-A, supra. Inasmuch as Mr. Underwood was terminated on June 29, 1992, Fluor's failure to comply with the applicable notice provision rendered it in violation of the law as of August 13, 1992. Indeed, as far as we can tell, Fluor has not to this day provided Mrs. Underwood with the required notice.

Under South Carolina law, private parties must commence an action for statutory penalties or forfeitures within one year of the triggering event. See S.C. Code Ann. § 15-3-570 (Law. Co-op. 1977). If we assume, for the sake of argument, that the discovery rule would apply to such actions, Mrs. Underwood's notice claim accrued, at the latest, when she discovered -- or reasonably should have discovered -- that she was entitled by law to receive individual notice of her rights from Fluor. Although the record does not disclose exactly when Mrs. Underwood discovered the rights secured to her by the COBRA amendments, Fluor waived any limitations defense by failing to assert it in its answer to the complaint. Anderson v. Flexel, Inc., 47 F.3d 243, 247 (7th Cir. 1995).

We need not ascertain the precise accrual date of Mrs. Underwood's claim, however, in order to fashion the appropriate penalty. Fluor's failure to provide the notice mandated by the COBRA amendments has not resulted in any continuing harm to this particular plaintiff. Principles of fairness therefore dictate that we limit the extent of Fluor's liability for the statutory penalty in this case to the limitations period -- in other words, to $36,500. Were we to decide otherwise, persons subjected to ERISA or COBRA violations, where those violations are unaccompanied by continuing harm, might be disinclined to promptly pursue a remedy.

IV.

Finally, we address the Underwoods' contention that Fluor committed further violations of ERISA by not timely providing them with certain Plan documents and other information that their lawyers had requested. The materials were eventually supplied; the district court found that they had been inadvertently misdirected to Mr. Underwood's counsel in an unrelated proceeding against Fluor Daniel, and,

11

therefore, that Fluor's technical violation of the statute was excusable. Upon reviewing the record, we are satisfied that the district court's finding was not clearly erroneous, and, therefore, that its denial of the Underwoods' motion to alter or amend was not an abuse of its discretion.

V.

The judgment of the district court, insofar as it denies the Underwoods' claims for Plan benefits and for statutory penalties emanating from Fluor's belated disclosure of Plan documents and information, is affirmed. The judgment is reversed insofar as it denies statutory penalties to Linda Underwood emanating from Fluor's failure to notify her of her rights under the COBRA amendments. The case is remanded to the district court with instructions to enter judgment for Mrs. Underwood in the amount of $36,500. The assessment and calculation of attorney fees, if appropriate, is left to the district court.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS

HALLANAN, District Judge, concurring in part and dissenting in part:

The notice requirements of 29 U.S.C. § 1166 state that a "group health plan shall provide, at the time of commencement of coverage under the plan, written notice to each covered employee and spouse of the employee (if any) of the rights provided under this subsection . . . ." 29 U.S.C. § 1166 (West Supp. 1996) (emphasis added). Section 1166 further reads that the administrator shall notify in the case of a qualifying event pursuant to paragraphs 1,2,4 or 6 of section 1163 of this title, any qualified beneficiary with respect to such event. 29 U.S.C. § 1166(a)(4)(A) (West Supp. 1996). These qualifying events include the termination of such employee by reasons other than employee's gross misconduct. 29 U.S.C. § 1163(2) (West Supp. 1996). Accordingly, each qualified beneficiary is entitled to "written notice" of their rights under COBRA upon commencement of a qualifying event.

12

Under the facts of the present case, Fluor freely admits that it was not their policy to send "written notice" to qualified beneficiaries at the time of Mr. Underwood's termination of employment.* Consequently, Fluor became subject to non-compliance penalties for failure to follow the plain and unambiguous language of the statute. 29 U.S.C. § 1132(c)(1) (West Supp. 1996). Nevertheless, the district court, in its discretion, denied relief. The district court reasoned that Mrs. Underwood, the beneficiary under the policy, had adequate notice of her rights and obligations in spite of Fluor's failure to provide her with "written notice."

The majority opinion correctly holds that such a ruling was an abuse of discretion and properly reverses the district court's denial of non-compliance penalties. With regard to that portion of the majority opinion, I agree. I, however, cannot concur with the majority's affirmation of the district court's denial of other equitable relief. I believe that this court's affirmation of the district court, in this regard, would implicitly and incorrectly allow "constructive notice" to serve as an adequate alternative to the "written notice" requirement of the statute. My rationale for such a view is twofold.

By adopting the rationale of the majority opinion, and thereby allowing "constructive notice" to serve as an adequate alternative to a "written notice" requirement, this court will be circumventing the plain language of the statute. Consequently, an insurance provider will now be able to satisfy the requirements of the statute by either providing "written notice" to the beneficiary or by arguing, as in the present case, that the beneficiary had adequate notice of the rights and obligations under the policy. Such circumstances show that the majority opinion has implicitly added language to the statute. If Congress intends for "constructive notice" to serve as an adequate alternative for the "written notice" requirement, then let it be the entity to say so.

Secondly, the majority's holding creates an avenue for increased litigation in the district courts. By allowing "constructive notice" to serve as an adequate alternative to the statutory requirements, it may become a financially sound policy to not follow the"written notice"

_____

*Mr. Underwood was terminated for reasons other than gross misconduct.

13

requirements of the statute and later litigate a"constructive notice" issue.

In the present case, Fluor would be liable for Mrs. Underwood's past due medical expenses if it were to award Mrs. Underwood coverage under the policy. However, if Fluor can persuade this court to adopt a "constructive notice" as an adequate alternative to the "written notice" requirement, it would only be subject to a fine which, arguably, would only be a small percentage of full coverage under the policy. Therefore, I believe that strict adherence to the statutory guidelines is warranted in order to avoid judicial legislating and increased litigation. Thus, in addition to reversing the district court's denial of non-compliance penalties, I would also reverse the district court's denial of other equitable relief and award Mrs. Underwood full coverage under the policy.

I respectfully dissent to the denial by this court of other equitable relief and would award full coverage under the policy.

14