**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 2, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 03-11264

---

JUNE LOPEZ, As next friend of the
Estate of Gloria Gutierrez, Deceased,

Plaintiff-Appellant,

versus

PREMIUM AUTO ACCEPTANCE CORPORATION,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before GARWOOD, JOLLY, and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant June Lopez (Lopez), on behalf of the estate of her deceased mother, Gloria Gutierrez (Gutierrez), appeals the limitations based summary judgment in favor of defendant-appellee Premium Auto Acceptance Corporation (Premium) on her claims under the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1001 *et seq.*, and the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1986.  We affirm.

**Facts and Proceedings Below**

Gutierrez was an employee of Premium and participated in its ERISA-qualifying employee benefit plan. Premium served as administrator of the plan. On August 28, 1997, three days after returning from surgery to treat her lung cancer, Premium terminated her employment. Premium did not provide Gutierrez with the statutorily required notice informing her that she had the right to elect continued insurance coverage under the employee benefit plan. Her insurance was canceled after thirty days following her termination. Gutierrez died on October 25, 1998.[1] According to the complaint, Gutierrez, between the cancellation of her insurance and her death, incurred $33,000 in medical bills that would have been covered by the employee benefit plan insurance. In April 1999 Lopez, on behalf of Gutierrez's estate, requested Premium to reimburse the estate for some of Gutierrez's medical bills because Premium had failed to notify Gutierrez of her right to elect to continue her insurance coverage under the plan. After some exchange of correspondence, Premium on March 20, 2000, notified Lopez that Gutierrez was not entitled to COBRA benefits because Premium was within the COBRA exception for employers with less than twenty employees.[2]

---

[1] Gutierrez died intestate with Lopez her sole heir. No administration was taken out on her estate. Before this court neither party raises any question as to Lopez's standing.

[2] The district court determined that the number of employees Premium had was disputed, a determination not challenged by Premium in this court.

On August 2, 2002, Lopez filed the instant suit against Premium, a two-count complaint alleging: (1) Premium, in violation of 29 U.S.C. § 1140 (commonly referred to as section 510 of ERISA), terminated her mother to prevent her from exercising her rights under Premium's employee benefit plan; and (2) Premium, in violation of 29 U.S.C. § 1166, failed to notify her mother that she was entitled under 29 U.S.C. § 1161 to continued insurance coverage under Premium's employee benefit plan. On August 27, 2003, Premium filed a motion to dismiss on the ground (among others) that both claims were barred by the statute of limitations. Because Premium supported its motion with documents outside the pleadings, the district court converted it to a motion for summary judgment. On October 31, 2003, the district court granted final summary judgment in favor of Premium, ruling that the claims against it were barred by limitations. Lopez now appeals.

## Standard of Review

We review the grant of summary judgment *de novo*. *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 278 (5th Cir. 2001). Summary judgment is appropriate when the record indicates "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## Discussion

The relevant facts are not in dispute, and the sole issue

3

before us is whether Lopez's claims are untimely.  Neither section 510 nor COBRA specify a limitations period.  In the absence of express statutory guidance, we borrow the statute of limitations from the most closely analogous state law.[3] *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 158 (1983).  The crux of this appeal is Lopez's contention that Texas's four-year residual statute of limitations, codified at TEX. CIV. PRAC. & REM. CODE § 16.051, applies to both her ERISA and COBRA claims.[4]  Premium, on the other hand, argues that the district court was correct in concluding that neither claim sounds in contract.  In granting summary judgment for Premium, the district court ruled that the section 510 claim is subject to the general two-year statute of limitations, TEX. CIV. PRAC. & REM. CODE § 16.003, applicable to most torts and discrimination claims, and that the COBRA claim is subject to the two-year statute of limitations for unfair insurance practices, TEX. INS. CODE ART. 21.21 §16(d).

## 1.  Section 510 of ERISA

Lopez alleges in her complaint that her mother's termination a few days after her return from cancer surgery constitutes a violation of section 510, which prohibits interference in rights

---

[3] The parties do not dispute that the operative state law in this case is the law of Texas.

[4] In Texas, the residual four-year statute of limitations generally governs contract actions. *Texas Indus. v. City of Dallas*, 1 S.W. 3d 792, 794 (Tex. App. 1999; pet. denied).

4

that have or will vest under an employee benefit plan. *See* 29 U.S.C. § 1140. She contends that this claim, though brought nearly five years after her mother was terminated, is timely because a cause of action under section 510 is analogous to a contract claim.[5]

Lopez's position is foreclosed by our decision in *McClure v. Zoecon, Inc.*, which squarely held that Texas's two-year statute of limitations for wrongful discharge and discrimination applies to section 510. 936 F.2d 777, 778-779 (5th Cir. 1991) (citing TEX. CIV. PRAC. & REM. CODE § 16.003).[6] She argues in her brief that *McClure* was wrongly decided, but, as she conceded at oral argument, the merits of her disagreement with *McClure* are irrelevant because this panel does not have the authority to overrule a prior panel. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Given that Gutierrez's cause of action under section 510 accrued when she was terminated on August 27, 1997, Lopez's claim, filed nearly five years later, was untimely.

---

[5] Lopez maintains, and Premium does not dispute, that she is also entitled to avail herself of TEX. CIV. PRAC. & REM. CODE § 16.062 which provides that on the death of one having a cause of action the running of limitations is suspended for 12 months following the death or until an executor or administrator is appointed, whichever is first. This will have no practical effect on the case, however, because, even assuming that this one-year extension applies, Lopez's ERISA and COBRA claims will not be timely unless the residual four-year statute of limitations also applies, as Lopez in effect concedes.

[6] *See also, e.g., Drayden v. Needville Indep. Sch. Dist.*, 642 F.2d 129, 132 (5th Cir. 1981); *Dupree v. Hutchins Bros.*, 521 F.2d 236 (5th Cir. 1975).

## 2. COBRA

Congress amended ERISA in 1986 by enacting COBRA, 29 U.S.C. §§ 1161-1169. The general purpose of the COBRA amendments is to require an employer that sponsors an employee benefits plan to offer a plan beneficiary, who is usually an employee or dependant, the option of continued coverage under the plan for an interval specified in 29 U.S.C. § 1162 when, because of a "qualifying event" such as termination, a beneficiary would otherwise be ineligible for coverage. As part of its obligations under COBRA, the plan administrator, usually the employer, must notify the beneficiary of her rights under COBRA after the qualifying event occurs. 29 U.S.C. § 1166. In this case, Lopez alleges, and Premium does not dispute, that Premium failed to provide Gutierrez with this mandatory notice after she was fired.

As a preliminary matter, it is necessary to clarify the nature of Lopez's COBRA cause of action. Lopez frames her COBRA claim in a single paragraph in her complaint entitled "COBRA VIOLATION" and stating:

> "The Defendant's failure to notify Gutierrez of her right to extend coverage after the qualifying event of her termination violated 29 U.S.C. § 1161 and 1166. As a result, Defendant is liable in an amount up to $100.00 a day from the date of this failure under 29 U.S.C. § 1132(c)."

This paragraph, however, states an incorrect legal conclusion in that Premium's failure to notify her mother of her right to continued coverage under 29 U.S.C. § 1161 does not, in and of

6

itself, constitute a violation of section 1161, and the remedy she cites does not apply to section 1161. Rather, the duty to notify is instead solely a creature of section 1166, and the statutory damages available under 29 U.S.C. § 1132(c) apply to section 1166 alone. Lopez's reference to section 1161, in other words, is a superfluity, and it is evident on the face of her complaint that the basis of her COBRA cause of action is section 1166, not 1161. The salient question on appeal, therefore, is not what statute of limitations applies to sections 1161 and 1166, but rather what statute of limitations applies to section 1166 alone.[7]

---

[7] As will be discussed in greater detail below, the remedy for a violation of § 1166 is a statutory penalty for each day of violation. 29 U.S.C. § 1132(c)(1). This perhaps raises the question of whether Premium has, since its duty under § 1166 first arose in September of 1997, violated the statute on each and every day, continuing into the present, that it failed to provide the required notice. Lopez, however, does not make, and did not make below, any sort of argument that limitations were either extended because of any continuing violation, or did not apply to violations within two years of suit. Lopez, rather, has consistently taken the position, here and below, that her COBRA § 1166 claim accrued September 29, 1997, when the 30-day period for giving notice following Gutierrez's termination expired without Premium having given Gutierrez the § 1166 notice, and that the applicable limitations period (four years according to Lopez) thereafter continued to run without interruption or suspension, except for the suspension under § 16.062 (*see* note 5, *supra*) during the 12 months following Gutierrez's death, so that Lopez's suit was timely *because* it was filed before September 30, 2002, though it would have been barred if filed thereafter. Because Lopez never raised it, we do not address any such continuing violation argument. In any event, the October 25, 1998 death of Gutierrez, the person to whom Premium owed the statutory duty, terminated any obligation to notify.

7

Lopez argues that her COBRA claim should be characterized as an action sounding in contract because it arises from an employment relationship. She likens the statutory duty of notice under section 1166 to the statutory duty to pay a minimum wage, which in Texas would be subject to the residual four-year statute of limitations that applies to basic contract actions. This reasoning is unpersuasive, however, because the notice requirement of section 1166 reaches beyond the employment context. Under COBRA, for example, an employee's spouse losing her coverage following a divorce is a plan beneficiary entitled under section 1166 to notice, even though there is no employer-employee relationship between the employer and the spouse. 29 U.S.C. § 1167(3)(A)(i) (defining "qualified beneficiary" as, *inter alia*, "the spouse of the covered employee[.]"); *McDowell v. Krawchison*, 125 F.3d 954, 958-959 (6th Cir. 1997). Thus even if the notice requirement can somehow be characterized as an implied contractual term, it will have to be for reasons other than the existence of an employer-employee relationship.

While the plain language of section 1166 itself offers little insight into how the provision should be characterized for statute of limitations purposes, the damages remedy does. 29 U.S.C. § 1132, which defines the remedies for ERISA violations, expressly distinguishes between suits brought to penalize a failure to comply with statutory disclosure requirements like

8

section 1166 and suits brought to enforce the specific terms of an employee benefit plan.  The only remedy available to redress a violation of section 1166 is statutory damages of between zero and one hundred dollars for each day in which notice is not provided, and "other relief as [the court] deems proper."  *See* 29 U.S.C. § 1132(c)(1).  Significantly, this subsection does not refer to any underlying employee benefit plan, and the formula for statutory damages cannot plausibly be characterized as an effort to redress the breach of any contractual obligation created by an employee benefit plan.[8]

By contrast, any other civil action not within the narrow scope of 29 U.S.C. § 1132(c) may be brought by an employee benefit plan participant or beneficiary:

> "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"

29 U.S.C. § 1132(a)(1)(B).  Such causes of action are presumed by the statute to relate to underlying contractual matters and the remedy therefore is framed in terms of an employee benefit plan itself.  *See Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir.

---

[8] In addition, subsection 1132(c) groups § 1166 alongside provisions requiring, for example, mandatory yearly disclosures to the Secretary of Labor.  *See* 29 U.S.C. § 1132(c)(2) (authorizing the Secretary of Labor to assess a civil penalty of $1,000 per day for the failure on the part of a plan administrator to file the annual report required under 29 U.S.C. § 1021).  The inclusion of § 1166 among what are plainly administrative regulations suggests that § 1166 too is an administrative regulation and not, as Lopez contends, a term of contract implied by operation of law.

9

1992) (concluding that a section 1132(a)(1)(B) suit to enforce rights under an employee benefit plan is subject to Texas's residual four-year statute of limitations).  Given that section 1132 expressly distinguishes a claim under section 1166 from virtually every other form of ERISA action and, furthermore, specifies that only statutory, rather than contract-like, damages are available under section 1166, we conclude, for statute of limitations purposes, that a claim under section 1166 does not sound in contract.[9]

It remains for us to determine to what a claim under section 1166 is most closely analogous.  The only published decision within the Fifth Circuit to address this issue concluded that section 1166 was subject to a two-year statute of limitations. *Myers v. King's Daughters Clinic*, 912 F. Supp. 233, 237 (W.D. Tex. 1995), *aff'd* 96 F.3d 1445 (5th Cir. 1996).  In *Myers*, the district court analogized the failure to provide the statutory notice required by section 1166 to an unfair insurance practice because an employer's duty under section 1166 is related to the

---

[9] We note that the remedy for an ERISA § 510 action is also created by 29 U.S.C. § 1132.  *See* 29 U.S.C. § 1140 (stating that interference by an employer with an employee's protected rights under an employee benefit plan shall be enforced in accordance with 29 U.S.C. § 1132). Because a § 510 action, unlike § 1166, is not a reporting requirement enumerated in 29 U.S.C. § 1132(c), the measure of damages available to a prevailing § 510 litigant includes retrospective and prospective relief under the employee benefit plan at issue.  Under *McClure*, a § 510 action, despite having a remedy defined in terms of an employee benefit plan, is deemed for statute of limitations purposes not to be a suit in contract.  It then follows a *fortiori* that a § 1166 action, which does not relate back to any underlying benefit plan, is also not a suit in contract.

10

provision of insurance coverage. *Id.* The court then applied the two-year statute of limitations found in the unfair insurance practices section of the Texas Insurance Code. TEX. INS. CODE ART.21.21 § 16(d). *Myers* has been followed by other federal courts considering this question. *See Mattson v. Farrell Distrib. Corp.*, 163 F. Supp. 2d 411, 418 (D. Vt. 2001) (rejecting the proposition that a section 1166 claim is analogous to a contract action); *Harvey v. Mingo Logan Coal Co.*, 274 F. Supp. 2d 791, 795 (S.D. W. Va. 2003), *aff'd* 104 Fed. Appx. 838 (4th Cir. 2004) (analogizing a section 1166 claim to one for unfair insurance practices, not contract); *Carter v. GE*, 5 Wage & Hour Cas. (BNA) 2d 1884, *5 (N.D. Ill. 2000) (same). The *Myers* approach is even more persuasive in light of the fact that an aggrieved insured in Texas can bring a claim of unfair insurance practices against an insurer that fails "to disclose any matter required by law to be disclosed..." TEX. INS. CODE ART. 21.21 § 4(11)(e). We conclude that this provision, subject to a two-year statute of limitations, TEX. INS. CODE. ART. 21-21 § 16(d), provides the closest state law analog to Lopez's federal cause of action arising from Premium's violation of section 1166. Lopez's section 1166 claim is, therefore, also untimely.

### Conclusion

For the foregoing reasons, the judgment of the district court is

11

AFFIRMED.