In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2379

BLANCA GOMEZ and JOAN WAGNER-BARNETT,

*Plaintiffs-Appellants,*

*v.*

ST. VINCENT HEALTH, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cv-00153—**Sarah Evans Barker**, *Judge.*

ARGUED MAY 13, 2011—DECIDED AUGUST 15, 2011

Before CUDAHY, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* When Blanca Gomez and Joan Wagner-Barnett left their jobs with St. Vincent Health, Inc. (the "Company"), they did not receive notices describing how to extend their health insurance coverage within the period prescribed by statute. Responding to a solicitation from a lawyer, Barnett and Gomez became the named plaintiffs in a proposed class action seeking

damages from and statutory penalties against the Company for its violation of the notice provisions. The district court declined to certify the class, however, having found the proposed class counsel to be inadequate for the purposes of class representation. It then considered the named plaintiffs' individual claims on cross-motions for summary judgment. The district court denied their request for statutory penalties against the Company and Gomez's request for damages, but it awarded damages to Barnett. Barnett and Gomez now appeal the district court's decisions not to certify the class and not to award statutory penalties, and Barnett appeals the amount of damages the district court awarded her. We affirm.

## I. BACKGROUND

St. Vincent Health, Inc. is the parent corporation for a system of hospitals and healthcare service facilities in central Indiana. During the period covered by the proposed class description, the Company administered group health plans for approximately sixteen facilities that employed thousands of individuals. In that capacity, it was responsible for complying with federal statutes and regulations relating to its employer-sponsored health insurance programs. This case involves the Company's obligation to timely notify qualified departing employees of their right to extend their health insurance coverage at their own cost after their employment ends. These notices are commonly called "COBRA notices," as the obligation was imposed by an amendment to the

Employee Retirement Income Security Act (ERISA) of 1974 contained in the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985.

Between May 2004 and January 2006, approximately 1,570 employees in the St. Vincent network experienced a qualifying event that obligated the Company to provide them with COBRA notices. Because of the organization's complexity, the Company employed third-party administrators ("TPAs") to assist in distributing COBRA notifications. The TPAs would receive automated notification from the human resources departments at various St. Vincent network facilities; they would then produce the required COBRA notices and mail them to the qualified beneficiaries on the Company's behalf.

The Company also established an oversight system for its employee-benefit programs. It hired outside auditors to investigate compliance with statutory, regulatory, and internal policy requirements for all of its benefit programs; part of those audits involved monitoring the COBRA notification program. Bradley & Associates, a public accounting firm, performed the audits during the period relevant to this case. The firm would procure a random sample of terminated-employee files and the associated TPA data to ensure that the Company was meeting its COBRA obligations. In addition, the Company operated a call center where current and former employees could inquire about plan benefits. The center logged over 55,000 calls during the period of the complaint. Neither the audits nor the call center yielded any

indication that the Company was faltering in its COBRA obligations.

Despite these efforts, the Company later determined that some notices had slipped through the cracks. In February 2006, three former employees brought a proposed class action against the Company in the Southern District of Indiana, alleging that at least forty former employees either received their COBRA notices late or never received them at all. In response, the Company fully investigated its COBRA compliance. It determined that between May 2004 and January 2006, an estimated 266 of the 1,570 participants who experienced qualifying events apparently did not timely receive their COBRA notices. The Company promptly contacted those individuals, provided the overdue notices, allowed retroactive election of benefits, and offered to negotiate payment plans for those who could not afford to immediately pay the accrued premium obligations.

The initial class action suit was terminated by court order in September 2007. *Brown-Pfifer v. St. Vincent Health, Inc.*, No. 1:06-cv-0236, 2007 WL 2757264 (S.D. Ind. Sept. 20, 2007). The district court declined to certify the proposed class for multiple reasons, including its finding that the proposed class counsel was inadequate to represent the proposed class. It then entered summary judgment in the Company's favor on the named plaintiffs' individual claims. Those named plaintiffs appealed the district court's judgment, but later voluntarily dismissed their appeal.

Instead of pursuing the appeal, the spurned proposed class counsel in the *Brown-Pfifer* case chose to pursue a

new class action involving the same operative circumstances. Using the list of qualified beneficiaries produced by the Company during discovery in the *Brown-Pfifer* litigation, counsel contacted those participants who had received untimely COBRA notices and solicited their participation in another lawsuit against the Company. Among others, Gomez and Barnett responded to his solicitation and authorized him to file, on their behalf, the lawsuit we review today.[1] As the only remaining named plaintiffs, they sought to represent a class materially identical to that proposed in *Brown-Pfifer*.

Gomez had worked as an Environmental Services Attendant at the St. Vincent Carmel Hospital until November 30, 2004. While working at the hospital, she and her husband were enrolled in health and dental insurance plans administered by the Company. After she left the job, her insurance coverage continued through December 31, 2004. Under COBRA, Gomez was eligible to extend her coverage for eighteen months by paying monthly premiums that had been previously paid by her employer. She should have received the COBRA notice by January 13, 2005, but she did not receive mailed notice until approximately June 22, 2006. If she had elected extended coverage, her monthly premiums would have been $304.10 for health insurance and an

---

[1] Two other plaintiffs, Techila Mugodi and Asira Evans, were initially included as plaintiffs named to represent the proposed class. The district court later removed them as named plaintiffs pursuant to their unopposed motion.

additional $35.54 for dental benefits. Gomez testified, however, that she would not have elected to extend her benefits because she could not have afforded the monthly premiums.

Barnett worked as a Registered Nurse at the St. Vincent Indianapolis Hospital. Her last day of employment was November 28, 2004. She had been enrolled in health, dental, and vision insurance plans administered by the Company. Like Gomez, Barnett had insurance coverage through St. Vincent that continued through December 31, 2004. She should have received the COBRA notice by January 11, 2005, but she did not receive mailed notice until June 25, 2006. Unlike Gomez, Barnett testified that she would have elected to pay the premiums to extend her benefits in order to offset her monthly prescription costs and other medical expenses. Her monthly COBRA premiums would have been $304.10 for health insurance, an additional $33.54 for dental benefits, and an additional $7.98 for vision benefits.

Barnett described having paid approximately $700 for prescription medications during the period between leaving St. Vincent Indianapolis and being covered by the health insurance program at her new employer in February 2005. She also provided evidence showing she incurred $648 of expenses for vision care between November 2004 and December 2005. She contends that she would not have incurred $940 in out-of-pocket health care expenses if she had received the required COBRA notice.

As in the preceding case, the district court denied the named plaintiffs' motion for class certification. It noted

that the allegations and arguments before the court at the certification stage were identical to those in the *Brown-Pfifer* litigation, concluding that this suit was filed in lieu of following through on the appeal originally filed in *Brown-Pfifer*. The district court found that the proposed class counsel had been deficient in both the former and current proceedings and that he lacked regard for scarce judicial resources, as he was attempting to relitigate the same operative facts and issues involved in the *Brown-Pfifer* case. It therefore concluded that the proposed class counsel would inadequately represent the proposed class, thus requiring it to deny certification.

The named plaintiffs' individual claims were subsequently addressed on cross-motions for summary judgment. The district court first denied their request for statutory penalties against the Company, finding that the circumstances did not warrant imposing a daily penalty for the Company's admitted failure to provide timely COBRA notices. It then denied Gomez's request for damages, finding that she had not substantiated any medical expenses and that she would not have extended her insurance coverage even if she had received a timely COBRA notice. But it awarded damages to Barnett for part of her out-of-pocket medical expenses, as she had testified that she would have paid to extend her coverage. Barnett had testified that she could not remember when or if she had dental or vision coverage, and she had not provided evidence of co-payments or deductibles for any potential coverage. Yet she credibly testified that she was not covered under any insurance plan when she incurred over $700 in prescription costs shortly after

leaving the St. Vincent Indianapolis Hospital. The district court therefore awarded Barnett $396 in damages, the difference between her prescriptions costs and the premium she would have paid in order to extend her coverage.

## II. ANALYSIS

Gomez and Barnett present three issues on appeal. First, they contend that the district court erred in its decision to deny class certification on the ground that their proposed class counsel was inadequate. They ask us to vacate the certification denial order and to certify their proposed class. Second, they contend that the district court's decision not to impose $55,220 in discretionary statutory penalties against the Company was erroneous. They ask us to reverse the entry of summary judgment and impose an appropriate daily penalty for the Company's delay in sending COBRA notices. Finally, Barnett contends that her damages award did not adequately compensate her for all of her out-of-pocket expenses resulting from the belated COBRA notice. She asks us to increase the award from $396 to $940. For ease of analysis, we will take up these issues in reverse order.

### A. Barnett's Damages Award

Barnett finds no fault in the district court's damages calculation for her out-of-pocket prescription costs, but she argues that the evidence supported an additional award of $544 to compensate her for vision-care expenses

she sustained. In her appellate briefs, Barnett does not specifically identify the statutory source of her entitlement to what she calls "equitable damages."[2] In their amended complaint, however, Gomez and Barnett alleged that the Company is liable for equitable damages because of its breaches of its duty under 29 U.S.C. § 1166 to provide timely COBRA notices; their summary judgment memorandum then clarified that they sought equitable damages pursuant to 29 U.S.C. § 1132(c)(1), the COBRA notification enforcement provision. That provision allows the district court both to assess statutory penalties against the administrator failing to issue timely notice and also to "order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B). The preliminary question thus arises whether the "equitable damages" sought by Barnett fall within subsection (c)(1)'s "such

---

[2] We suspect that the plaintiffs use that term because compensatory damages are not authorized in suits under ERISA's general enforcement provision, which allows courts to provide only equitable forms of relief. *See* 29 U.S.C. § 1132(a); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002) (distinguishing equitable and legal relief in the ERISA context). The kind of relief sought in the plaintiffs' claim for "equitable damages"—recovery for pecuniary loss as a result of the Company's inaction despite its obligation to timely provide COBRA notices—appears legal rather than equitable in nature and is therefore generally not available under 29 U.S.C. § 1132(a)(3). *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 483 (7th Cir. 2010); *see also Mondry v. Am. Family Mut. Ins. Co.,* 557 F.3d 781, 804 (7th Cir. 2009).

other relief" category when they would seem to be excluded from subsection (a)(3)'s available remedies.

The ERISA enforcement provision "expressly distinguishes between suits brought to penalize a failure to comply with statutory disclosure requirements like section 1166 and suits brought to enforce the specific terms of an employee benefit plan." *Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 509 (5th Cir. 2004). Section 1132(a)(1)(A) provides that a beneficiary may bring a civil action "for the relief provided for in subsection (c) of this section"—the notification compliance subsection—implying that the available relief in that subsection would be broader than the equitable remedies specified in subsections (a)(1)(B) and (a)(3). Indeed, the broad language of the subsection invoked by Barnett does not, on its face, preclude monetary damages. *See* 29 U.S.C. § 1132(c)(1)(B) ("[T]he court may in its discretion order such other relief as it deems proper.").

The district court, relying on decisions from other districts, determined that "such other relief" could include an award of medical expenses incurred as a result of the COBRA notification violation, less deductibles and premiums that the beneficiary would have paid to obtain extended coverage under COBRA. *Gomez v. St. Vincent Health, Inc.*, No. 1:08-cv-0153, 2010 WL 1854106, at *4 (S.D. Ind. May 6, 2010). We and other courts of appeals have previously acknowledged this practice of district courts without explicitly condoning it. *E.g.*, *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 504 (7th Cir. 1998); *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198-99 (10th Cir. 1998).

In this case, the Company has not contested the propriety of the relief secured by Barnett, and neither party has provided any briefing regarding the limits of this kind of relief.

While we are reticent to condone without limitation this method of compensation in COBRA-notification violation cases, we find no error in this particular case. The district court awarded the monetary damages pursuant to subsection 1132(c)(1)'s "such other relief" provision, and the award does not contradict the section's plain text. The awarded damages were far less than the potential statutory penalties the district court could have awarded pursuant to that subsection. *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2009) (the purpose of statutory penalties under section 1132(c)(1) "is to induce the plan administrator to comply with the statutory mandate rather than to compensate the plan participant for any injury she suffered as a result of non-compliance."). It also did not effectively transfer the risk of paying exorbitant medical costs from an insurer to an employer-based administrator by virtue of the administrator's mere technical violation of notification provisions. Finally, the Company did not appeal the award as inappropriate or beyond the scope of the statute. Accordingly, we conclude that the district court did not err in awarding Barnett $396 in damages pursuant to 29 U.S.C. § 1132(c)(1).

Nor did the district court err in declining to award Barnett $544 in additional compensation for her vision-care expenses. It found that Barnett's "failure to recall

specific times when she had . . . vision coverage combined with the lack of evidence regarding the co-payments and deductibles associated with [it] leaves the court with nothing beyond mere speculation to establish an amount that would properly compensate her for the . . . vision bills she allegedly paid in late 2005." *Gomez*, 2010 WL 1854106, at *4. On appeal, Barnett argues she specifically testified that she did not have vision insurance as of October 24, 2005, or December 24, 2005, the dates she claims to have incurred the expenses. In her reply brief, she refers to this testimony as unrefuted.[3] She contends that the district court therefore erred in denying her additional compensation for her vision expenses.

Yet the deposition testimony to which she refers actually indicates that she did not have vision insurance on December 24, 2004; it does not refer to any dates in 2005. (Docket 107-7 at 26.) This makes sense, as the $46 receipt for her eye exam at Walmart is dated "12/24/2004," as opposed to the 2005 date her counsel repeatedly alleges throughout the briefs. (Appellant's Br. at 11, 39; Reply Br. at 15.) The receipt for her deposit of $179 on her new glasses is undated, but she testified that it was from the same time. Because her insurance

---

[3] She also contends that the Company conceded that she "did testify that she did not have vision insurance as of October 24, 2005 or December 24, 2005." (Reply Br. at 15 (citing Appellee's Br. p. 43 fn. 9).) Her contention is misleading, as the alleged concession only acknowledges that Barnett gave conflicting testimony.

benefits through the St. Vincent Indianapolis Hospital did not expire until the end of 2004, she was—contrary to her testimony—still covered by vision insurance at that time. Further, Barnett testified that she would have dropped extended vision coverage under COBRA once coverage became available from a subsequent employer. She also testified that she did not know whether on October 24, 2005—the date she incurred $244.95 in vision expenses from a J. C. Penney store—she had insurance coverage. (Docket 107-7 at 21-22.) The district court was, therefore, well within its discretion to deny additional compensation for these expenses, as there was no evidence to indicate that Barnett incurred them as a result of the Company's failure to provide her timely notice of her COBRA rights.

### B. Denial of Statutory Penalties

Gomez and Barnett contend that the district court erred by not imposing statutory penalties on the Company for its failure to ensure they received timely COBRA notices. The Company concedes that it did not meet the notice requirements in 29 U.S.C. § 1166 after Gomez and Barnett left their respective St. Vincent hospitals. Because of the Company's violation, the district court had the discretion to hold the Company liable for statutory penalties of up to $110 a day from the date of the violation. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. The district court declined to impose the penalties, however, noting that neither woman was significantly prejudiced by the delay in notification, that there was no indication

of bad faith or gross negligence, and that the Company offered to provide retroactive coverage through a payment plan. We review the district court's decision regarding statutory penalties under 29 U.S.C. § 1132 for an abuse of discretion. *Mlsna v. Unitel Commc'ns, Inc.*, 91 F.3d 876, 883 (7th Cir. 1996).

Gomez and Barnett first argue that the Company was, as a matter of law, obligated to have an oversight system in place to ensure that the COBRA notices reached all qualified beneficiaries on time. They are incorrect. There is no mandate for an administrator—even one that uses TPAs to assist it in fulfilling its ERISA and COBRA obligations—to adopt an oversight system, no matter how wise adopting such a system would be. The named plaintiffs argue that *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223 (11th Cir. 2002), established this oversight mandate, but they overstate the case's holding. In *Scott*, the Eleventh Circuit concluded only that an administrator or employer cannot meet its COBRA notification obligations by contracting with a TPA, providing the TPA with information regarding a qualifying event, and then assuming the TPA sent the notifications that it was contractually required to. *Id.* at 1231. The case did not require that the administrator or employer take "the necessary steps to ensure that the [TPA] would, in all cases, make such notification." *Id.* Rather, it held—as we do now—that in the absence of such an oversight system, the use of a TPA cannot shield the administrator from liability for violations of COBRA's notification requirements. It is not the absence of an oversight system that violates COBRA; it is the insufficiency or

lateness of the COBRA notice that breaches the administrators' duty.

Regardless, the Company did have an oversight system in place, albeit an imperfect one. Despite Gomez and Barnett's arguments to the contrary, the record indicates that the Company received COBRA compliance feedback from annual audits performed by Bradley & Associates. Though this feedback concerned only a random subset of qualified beneficiaries each year, it nevertheless provided some indication of the performance of the Company's TPAs. In addition, the Company's call center provided another means of monitoring performance. Over the course of 55,000 calls, the center never received any complaints regarding insufficient or late COBRA notifications during the period covered by the complaint in this case.

Gomez and Barnett next argue that the district court was incorrect to focus on the lack of prejudice instead of focusing on the Company's conduct as the administrator. They are correct that the district court could have imposed statutory penalties even if it had found that they had suffered no prejudice as a result of the late notices. *See Scott*, 295 F.3d at 1232; *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006); *accord Mondry*, 557 F.3d at 806 (construing analogous ERISA disclosure requirement). But prejudice is among the valid factors district courts may evaluate when determining whether to impose statutory penalties for COBRA-notification violations. *Scott*, 295 F.3d at 1232. Courts should also consider the nature of the plan administrator's con-

duct, including its demonstration of good or bad faith. *Starr*, 461 F.3d at 1040.

This case lacks any evidence of an administrator's bad faith (such as misrepresentations or willful delay in response to beneficiaries' requests for information) or gross negligence—behaviors that a district court could readily assume would be deterred by statutory penalties. *See id.* ("The purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA . . . and to punish noncompliance" (citations omitted)). In such a case, evidence of the administrator's good faith (such as immediate corrective efforts when notification violations come to light and offers to negotiate payment plans for premiums to establish retroactive coverage) and of the lack of significant injury or prejudice caused by technical violations become more significant to the district court's analysis. That is exactly the kind of analysis the district court engaged in here, and we find no error in its reasoning.

We find the appellants' remaining legal and policy arguments unpersuasive. In support of their contention that "it is unconscionable to fail to impose a daily statutory penalty" in this case, (Appellants' Br. at 34), they analogize their case to an unpublished case in which the Fourth Circuit determined that the maximum statutory penalty needed to be imposed as a matter of law for the administrator's COBRA violations, *Underwood v. Fluor Daniel, Inc.*, No. 95-3036, 1997 WL 33123, at *4 (4th Cir. Jan. 28, 1997). But the circumstances of their

case could be no further from those in *Underwood*, where the administrator altogether failed to comply with COBRA from its passage until at least eight years later. *Id.* Their unconscionability "argument" is unsupported hyperbole, and we give it no credence. We likewise find unpersuasive their policy-based assertions that the district court's decision will "be the 'darling' of the defense bar across the nation," (Reply Br. at 14), that it "will actually encourage plan administrators to worry less about their COBRA duties," (Appellants' Br. at 35), and that if we "give [our] stamp of approval to this decision, this will effectively end COBRA litigation in this Circuit," (Reply Br. at 14). We are unmoved by invective that neither addresses the district court's rationale nor attempts to build a policy argument through persuasive reasoning. We remain confident that the risk of statutory penalties and other relief district courts deem proper will continue to deter violations of ERISA and COBRA—even if the proposed class counsel in this case does not collect his contingency share of the $55,220 in statutory penalties sought in this case.

## C.  Denial of Class Certification

That brings us to the final issue in this appeal, the district court's denial of the named plaintiffs' motion to certify the proposed class. In the related antecedent case of *Brown-Pfifer*, another judge in the same district court declined to certify a nearly identical class on multiple grounds. But in this case the district court declined to certify the class on a single ground: that the proposed class

counsel was not an adequate representative of the class. On appeal, Gomez and Barnett argue—through the same counsel that sought to become class counsel below—that the evidence demonstrated that the proposed class counsel was "more than competent" to represent the proposed class. We review the district court's denial of the class-certification motion for an abuse of discretion. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

Before a district court may certify a proposed class, the class must meet the requirements of Federal Rule of Civil Procedure 23(a). *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986). One of those requirements is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993); *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1013 (7th Cir. 1999) (the district court judge must "assess the class lawyer's competence before certifying a suit to proceed as a class action").

The district court assessed the proposed class counsel in this case and determined that his "actions during his attempts to represent the proposed class through two separate suits [did] not make him an adequate class counsel." It based this conclusion on counsel's conduct during both the *Brown-Pfifer* case and this case. In the

*Brown-Pfifer* litigation, another judge in the same district court found that counsel was not diligent in prosecuting his proposed class action, had engaged in faulty discovery efforts, had been subjected to orders to compel and awards of cost, and had failed to develop a full record for summary judgment consideration; that judge denied class certification in part based upon proposed class counsel's inadequacy. In this case, the district court judge considered those findings from *Brown-Pfifer*. It then noted that the same proposed class counsel had brought a nearly identical case here and that—at the certification stage—he made "no arguments that are different from those" in *Brown-Pfifer*. The district court went on to note that counsel had already been ordered to pay expenses in conjunction with the Company's motion to compel in this case. It also found that counsel's "questionable work in [the *Brown-Pfifer*] case and his decision to relitigate the same issues in this court show a lack of regard for scarce judicial resources." *Gomez v. St. Vincent Health, Inc.*, 1:08-cv-0153, 2009 WL 1853120, at *3 (S.D. Ind. June 25, 2009). Based on these considerations, the district court determined that proposed class counsel was an inadequate representative of the proposed class and that certification had to be denied accordingly.

On appeal, counsel does not directly address the concerns identified by the district court. Instead, he argues first that he is qualified as class counsel because (1) he knew the case well from his involvement in the *Brown-Pfifer* litigation, (2) no other lawyer had sufficient familiarity to take on class representation without significant additional work, and (3) he had been certified as

class counsel in another similar class action suit before a different judge in the district. He then argues that the district court impermissibly looked outside the record of this case by considering the proceedings in the *Brown-Pfifer* case. His final argument is that this case differs significantly from the facts in *Brown-Pfifer*, so the basis of the district court's certification decision was flawed.

We find these arguments unpersuasive for a number of reasons. First, his arguments do not address the district court's conclusions regarding diligence, respect for judicial resources, and promptness. Second, while counsel's familiarity with both this case and the *Brown-Pfifer* case is clear—discovery he acquired in the *Brown-Pfifer* case enabled him to solicit the named plaintiffs as proposed class representatives in this litigation—the efficiency he claims results from that familiarity has not been demonstrated. He has, for example, already been subjected to a successful motion to compel and an ac-companying order to pay costs and fees. Regardless, familiarity does not equate to adequacy; it is only a part of the analysis. *See* Fed. R. Civ. P. 23(g); 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1769.1 (3d ed. 2005) (discussing quality of work, briefing skills, diligence, care, and attention to detail as factors courts evaluate).

We also note that he moved the district court to allow his use of discovery materials from *Brown-Pfifer* in this case. To suggest, then, that the district court erred in its consideration of the class certification motion in this case by referring to the proceedings and the district

court judge's reasoning in the *Brown-Pfifer* case is—in a word—absurd. A court's experience with a particular counsel—even if that experience is not reflected in designated evidence—may be relevant to its determination of the counsel's adequacy to represent a proposed class. *See, e.g.*, *Greisz*, 176 F.3d at 1014. Further, the proposed class counsel *himself* urges us to consider his certification as class counsel in a separate case before then-Chief Judge McKinney as evidence of his competence.

Finally, by arguing that some facts in Gomez's and Barnett's cases differ from the named plaintiffs in the *Brown-Pfifer* case, counsel misconstrues the district court's order. The class certification was not denied in this case because the facts were materially identical to those in *Brown-Pfifer*; rather, the district court found the nearly identical arguments at the class certification stage to be indicative of counsel's competence and attitude. And if the alleged factual distinction was significant to the certification decision, counsel had in fact forfeited the issue by waiting until his motion to reconsider the certification denial to argue it.

If counsel wished to convince us that the district court abused its discretion by finding him inadequate to represent the proposed class, his demeanor on appeal has not helped his cause. He has misrepresented fundamental facts. And he has relied on hyperbole in the place of persuasive argument,[4] failing to refute the district

---

[4] In addition to the examples already described, he also wrote the following, without any outward sign of deliberate irony:

(continued...)

court's reasoning. The district court did not consider improper materials, and nothing from our own observations of counsel suggests that its findings were flawed. Accordingly, the district court did not err in denying class certification because it found the proposed class counsel inadequate to represent the class.

### III.  CONCLUSION

The district court did not err by declining to certify the proposed class or by denying the named plaintiffs' request for statutory penalties. It also did not err in determining that the evidence did not support an additional damage award based on Barnett's vision-care expenses. Accordingly, we AFFIRM the district court's judgment in all respects.

---

[4] (...continued)

"Given that Administrator can make no 'real' arguments to support the erroneous finding of the District Court, it is left with mudding the waters in the hopes of confusing this issue beyond comprehension." (Reply Br. at 4.)

---