[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 25, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-11734

_____

D.C. Docket No. 98-00426-CV-FTM-29

IVORY SCOTT,

                                             Plaintiff-Appellant,
                                             Cross-Appellee,

versus

SUNCOAST BEVERAGE SALES,
LTD., PMBA, INC.,

                                             Defendants-Appellees,
                                             Cross-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(June 25, 2002)**

Before ANDERSON, HULL and KENNEDY[*], Circuit Judges.

KENNEDY, Circuit Judge:

_____

[*]Honorable Cornelia G. Kennedy, U.S. Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

Plaintiff Ivory Scott sued his former employer, Suncoast Beverage, alleging employment discrimination on the basis of race. He alleged that Suncoast assigned him to a sales route that consisted of more, and smaller, accounts than other routes because he is black. He also alleged that he was terminated because he is black. The district court granted summary judgment in favor of Suncoast as to these claims. Scott also alleged that after his termination Suncoast failed to adequately notify him of his right to continue health coverage under COBRA, 29 U.S.C. §1166(a). On this claim, the district court granted summary judgment in favor of Scott, awarded Scott $10,800, representing $240 per day for a period of 540 days, and denied Suncoast's subsequent motion for reconsideration. Scott appeals the court's order granting summary judgment against him on the discrimination claims. Suncoast cross-appeals the court's judgment and award on the COBRA claim.

**I.**

Suncoast is an Anheuser-Busch wholesaler, selling and delivering beer products to restaurants, bars, grocery stores, and convenience stores in Florida. Scott began his employment at Suncoast as a night loader in the warehouse in 1993. He had sought a position as a driver, but could not be employed by Suncoast as a driver until a speeding ticket was removed from his official record. In January 1994, Scott was promoted to driver and assigned his own route, known as the "Hill Route." Suncoast

2

has twelve routes, which are designed so that each route produces roughly the same total volume as the other routes. The Hill Route, however, consists of many smaller accounts. The two drivers on the Hill Route immediately preceding Scott had been white. In August 1994, Suncoast began pre-selling its beer, rather than selling right from the delivery truck. At that time, Scott became a pre-salesman. His main tasks as a pre-salesman were to determine a store's inventory, decide which products need re-stocking, estimate how much of each product would be used before the next delivery, and enter this information in a route book. The driver would later deliver the products ordered by the pre-salesman based on that information.

Anheuser-Busch stamps each of its beer products with a date code, and allows its distributors 110 days from that date to get the beer delivered to an account and sold to the ultimate consumer. At Suncoast, it is the responsibility of the pre-salesman to rotate the older beer to the front and to ensure that beer that is close to becoming "overage" is moved to a location where it can be sold more quickly. A pre-salesman may trade the nearly overage beer with one of his other accounts to get it moved, or he can return it to the warehouse 14 days or more before it becomes overage and Suncoast will try to place it in a store that sells a high volume of that particular product. If the pre-salesman fails to do this, it is his responsibility, as well as the delivery driver's, to return the overage product to the warehouse. A portion of any

3

overage product costs are charged back to the driver and the pre-salesman, and deducted from their paychecks.

In September 1994, the first of Scott's documented performance problems occurred. A handwritten note in his personnel file indicated that he had failed to create displays in two of his stores, and that he left out-of-date beer at one of his customers' stores. He was issued a verbal warning. From that time forward, Scott received several verbal and written warnings regarding his performance and other disciplinary concerns. These problems included overage product charges, allegedly harassing the wife of one of his customers, dropping a customer's check on the warehouse floor where it was eventually discovered by another Suncoast employee, not maintaining his route book, lateness, failure to create displays properly, and failure to deliver some requested products. Although he did receive some relatively positive performance reviews during that time, some other reviews indicated concerns about Scott's performance in specific areas. In September 1996, Scott was suspended without pay for two days and placed on 90 day probation for performance reasons. Scott was repeatedly warned that further deficiencies could result in suspension and/or termination. Nonetheless, at one point near the end of his employment with Suncoast, Scott received the Salesman of the Quarter award.

4

Scott's chief evidence of discrimination is a comment made by another Suncoast employee. In March 1995, Mike Malay and Brad Martin, two white Suncoast employees, were discussing Scott, who was absent because of jury duty for three days. Malay, Scott's supervisor at the time, was apparently unhappy about filling in for Scott. Martin then said, "We'll burn his black ass." Martin was not Scott's supervisor at the time, but became his supervisor later, and was the source of several of the write-ups in Scott's personnel file. Martin was still Scott's supervisor at the time Scott was fired.

Scott was terminated on August 8, 1997. Suncoast Vice President of Sales Dennis Peterson and Bill Whidden, another Suncoast supervisor, informed Scott that he was being terminated because of his poor performance. During his termination meeting, Scott initialed a form which stated that COBRA health insurance information had been discussed with him. According to Scott, a Suncoast employee simply told him that some COBRA information would be sent to him soon, but he never received any materials informing him of his COBRA rights. Suncoast had contracted with a third party, First Health, to send out COBRA notifications.

II

A. Standard of Review

We review a district court's grant of summary judgment de novo. *See Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

## B. Discrimination Claims

### 1. Direct Evidence of Discrimination

Scott argues that summary judgment was inappropriate because he produced direct evidence of discrimination with respect to his termination. Scott points to Martin's comment, "We'll burn his black ass," as direct evidence of discrimination. The timing of this statement is important. At the time the statement was made, Martin was merely one of Scott's co-workers. At the time that Scott was terminated, approximately two and one-half years later, Martin had been promoted and was Scott's immediate supervisor. Scott argues that attitudes are slow to change, and therefore, this court should assume, in the absence of any evidence to the contrary, that Martin still held this racist attitude when Scott was terminated. Suncoast contends that Martin was not the ultimate decision-maker with respect to Scott's

6

termination, and that the remark was too remote to be direct evidence of discrimination.

Even if we were to assume that Martin had significant input into the termination decision, his remark does not constitute direct evidence of discrimination. Direct evidence is evidence which, if believed, proves the existence of a fact without inference or presumption. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). The Eleventh Circuit has stated that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification]" are direct evidence of discrimination. *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (internal quotation marks omitted). To be direct evidence, the remark must indicate that the employment decision in question was motivated by race. *See id.* Martin's statement does not rise to that level, because it was made approximately two and one-half years before the termination, and because it was not directly related to the subject of Martin's termination.

Martin made the remark in question while conversing with another employee in March, 1995. Scott was not terminated until August, 1997. Whether or not Scott's empirical contention that racist attitudes are slow to change is correct, the comment in this case was simply too far removed and too indirectly connected to the

termination decision to constitute direct evidence of discrimination under the law of this circuit.

## 2. Circumstantial Evidence of Discrimination

Although Scott has failed to produce direct evidence of discrimination, he may be able to avoid summary judgment with circumstantial evidence, utilizing the *McDonnell-Douglas* burden shifting analysis. In order to make out a prima facie case of disparate treatment discrimination, a plaintiff must generally show that (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) the employer treated similarly situated employees outside of the protected class more favorably; and (4) plaintiff was qualified to do the job. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001). Once plaintiff has established a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action. *McDonnell-Douglas*, 411 U.S. at 802. Once defendant has done so, the plaintiff bears the burden of showing that defendant's proffered reason is merely pretext for discrimination. *Id.* at 804.

The district court granted summary judgment in favor of Suncoast because, it concluded, Scott failed to meet the third requirement of the prima facie case as to either the route assignment or the termination. The court noted that both blacks and

whites had historically been assigned to the route in question, and that after Scott's termination it was assigned to two white salesmen and then to a black salesman. Although Scott produced some evidence of another Suncoast employee with overage product problems who was not terminated, the court found that he was not similarly situated, because Scott's disciplinary record contained a broader range of problems.

Unlike the district court, we will assume that Scott has presented a prima facie case of discrimination and move directly to the next step of the *McDonnell-Douglas* analysis. Suncoast has met its burden of articulating legitimate, nondiscriminatory reasons for its actions. As to the route assignment, Suncoast states that it offered Scott a promotion from his warehouse job to a driver position, and that it assigned him to a route with which he was familiar. With respect to the termination, Suncoast states that Scott was fired due to his poor performance record.

Because Suncoast has offered legitimate reasons for its actions, the burden shifts back to Scott to present evidence from which a jury could conclude that Suncoast's reasons are pretext for unlawful discrimination. This, Scott has failed to do. Scott points to two pieces of evidence that could be viewed as arguably persuasive in an attempt to show pretext: 1) Martin's statement, "We'll burn his black ass," and 2) the difference in Suncoast's treatment of Scott and Allan Flaitz, a white

9

co-worker who had been reported and charged for overage products on several occasions.[1]

Scott's proffered evidence fails to create a genuine issue of fact on pretext. We initially note that neither of these two pieces of evidence relate to Scott's route assignment. Hence, Scott has failed to meet his burden as to that claim. As to the termination, Scott's evidence presents a closer case, but still fails to demonstrate a triable issue of fact. Although a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext, *see Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286 (11th Cir. 1998), it will usually not be sufficient absent some additional

---

[1] Scott's other purported of evidence of pretext is simply not persuasive. Scott argues that his receipt of the "Salesman of the Quarter" award shortly before his termination shows that he was not considered a substandard employee. Yet, his personnel file undeniably contains several write-ups and warnings indicating otherwise. Winning an award for one quarter of performance, even if he did perform admirably during that quarter, does not erase all previous negative evaluations of his work. Scott also points out that his overage product charges increased dramatically near the end of his tenure, suggesting that Martin was trying to create and document a reason to fire him. Yet, it appears from the record that Scott's overage product charges increased significantly *after* he was terminated on August 8, 1997, undermining Scott's contention that the overage product charges were pretext for discrimination. Moreover, Scott has presented no evidence from which a jury could conclude that the overage product charges were false. He points to the testimony of one employee at one store, who said that he saw Martin removing fresh beer. But when pressed, this witness admitted that his belief that the beer was fresh was based on his knowledge that it had been on the shelf for only two weeks. He did not look at the date codes on the beer that was being removed, and admits that he did not know the date codes for that beer. Hence, his testimony that the beer had been delivered only two weeks prior to its removal does not show that Martin removed any fresh beer; the beer Martin removed in that instance might well have been stocked as "close coded" beer, or beer that Suncoast is trying to sell quickly because the date on which it will be considered overage is approaching. No reasonable jury could conclude from this evidence that Martin was creating false overage product charges in an attempt to get Scott fired.

evidence supporting a finding of pretext. *See Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002).

In *Ross*, the plaintiff was an African-American hired to help deliver furniture. Noticing that customer tips were slowing down the loading of furniture, he placed a tip box near the loading dock. When a customer complained about the tip box, he removed it. Plaintiff testified that his supervisor had also received tips. When plaintiff was terminated, the defendant claimed that he was fired for soliciting tips. Plaintiff also testified that his supervisor and another employee had made racist comments long before the termination. Although these comments were too remote and attenuated to constitute direct evidence of discrimination, the court held that they could nonetheless contribute to plaintiff's circumstantial case. The court when on to hold that "these comments, considered together with the fact that [the supervisor] had received tips, support the jury's rejecting [defendant's] proffered explanation for firing [plaintiff]." *Id.* at 1292.

In *Rojas*, plaintiff was a female veterinary assistant who was fired for performance reasons, according to the defendant. The plaintiff offered only one piece of arguably persuasive evidence that the performance reason was pretextual: a sexist comment made to (and concerning) another woman that was wholly unrelated to plaintiff's termination. The court distinguished *Ross*, stating:

The facts of *Ross*, however, are clearly distinguishable. In *Ross*, fairly strong additional evidence supported a finding of pretext (specifically, that the supervisor who had fired plaintiff had been engaged in the same activity for which plaintiff was fired). But no such additional evidence exists here. The *Ross* court, in fact, explicitly noted that the evidence relating to the discriminatory comments had to be "read in conjunction with the entire record" and "considered together with" the other evidence in the case. Because [the] alleged comment was . . . an isolated comment, unrelated to the decision to fire Rojas, it, alone, is insufficient to establish a material fact on pretext.

*Rojas*, 285 F.3d at 1343 (quoting *Ross*, 146 F.3d at 1291-92).

We similarly find *Ross* distinguishable. Here, there is no additional evidence that is even marginally persuasive on the issue of pretext. Scott's only additional evidence of pretext is Suncoast's treatment of Scott's co-worker, Flaitz. But the differences between Scott's disciplinary record and Flaitz's render such a comparison meaningless. Although Flaitz was written-up for overage products on multiple occasions, Scott's problems were far more widespread. Scott was disciplined

12

repeatedly for such infractions as lateness, bothering a customer's wife, misplacing a customer's payment check, failing to deliver requested products, failing to properly display products, inadequate sales performance, and not maintaining his route book. Without additional persuasive evidence of pretext, Martin's statement, standing alone, is insufficient to create an issue of fact on pretext.

Even assuming that Scott established a prima facie case of discrimination, he failed to produce evidence from which a reasonable jury could conclude that Suncoast's legitimate reasons for its actions were pretextual. We therefore affirm the district court's decision to grant summary judgment in favor of Suncoast on Scott's discrimination claims.

## C. COBRA Claim

### 1. Liability

The district court granted summary judgment in favor of Scott on his COBRA claim. Suncoast then moved for reconsideration based on newly-discovered evidence. Following an employee's termination, 29 U.S.C. § 1166(a)(4)(A) requires plan administrators to notify the former employee of their right to receive continuation coverage. The notice must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage. *See Meadows v. Cagle's, Inc.*, 954 F.2d 686, 692 (11th Cir. 1992).

In this case, a Suncoast employee simply told Scott that he would receive some COBRA information in the mail. Scott has testified that he never received any COBRA information. Suncoast claims that it had entered into a contract with First Health, under which First Health would send out the COBRA notices for Suncoast. Suncoast contends that it satisfied its obligation by providing First Health with the necessary information and instructing First Health to send the COBRA notice to Scott, as was their normal procedure. In support, Suncoast cites *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1997), for the proposition that a good faith attempt to comply with a reasonable interpretation of the statute is sufficient to satisfy the notice requirement. However, the issue in *Smith* was the sufficiency of oral notice, where important facts about the employee's rights were omitted from the notice. Here, the evidence (as summarized in the briefs and order) suggests that Scott received no notice whatsoever of his rights under COBRA. Suncoast also cites several cases in which defendants were held to have satisfied their obligations under the statute, despite the plaintiffs' testimony that they did not actually receive notice of their COBRA rights. (Suncoast Brief at 53). *Jachim v. KUTV Inc.*, 783 F.Supp. 1328, 1333-34 (D. Utah 1992) is typical of this line of cases. In *Jachim*, the defendant's human resources manager testified that she prepared a letter containing notification of COBRA rights and mailed it to the last known address of

14

the plaintiff. The court held that this was sufficient to satisfy the statute because the defendant sent the notice in a good faith manner reasonably calculated to reach the plaintiff. Here, Suncoast tries to extend the good faith language from these cases to cover a situation in which it has contracted with a third party to send the notice, but there is no evidence that any notice was ever sent by that third party. But Suncoast has cited no case where an employer or administrator was relieved of liability because it had contracted its notification obligations out to a third party. To stretch the good faith language that far would essentially permit an employer to contract away an obligation specifically assigned to it under the statute. Simply hiring an agent and then instructing the agent to send notice is not sufficient to satisfy the statute, where there is no evidence that the agent sent out a notice to the plaintiff, nor any evidence that the principal took the necessary steps to ensure that the agent would, in all cases, make such notification.

Suncoast also argues that the district court abused its discretion by denying the motion to reconsider based on new evidence. The new evidence in question consists of affidavits from two Suncoast employees and a First Health employee. The district court noted that the testimony of the Suncoast employees could have easily been produced prior to the close of the discovery period. As to the First Health employee, the district court noted that the subpoena duces tecum was mailed to First Health by

Suncoast's counsel after the close of discovery. Further, the court noted, the affidavit of the First Health employee was insufficient to overcome summary judgment, because 1) it did not establish that she was a First Health employee at the time the notice was to be sent, 2) it did not establish that she is a proper records custodian, 3) it did not establish that she had knowledge of the company's ordinary course of business at the time in question, and 4) her testimony only related her understanding of the usual practice, rather than any knowledge that a letter was actually sent to Scott. The court also noted that the reliability of the affidavit was suspect, because she referred to Scott by the wrong gender.

Suncoast could have timely produced the testimony of its own employees, so there is no excuse for its failure to produce that evidence earlier. As to the First Health employee's testimony, it does not appear to establish compliance with the statute, as the district court noted. The denial of the motion to reconsider was not an abuse of discretion.

## 2. Penalty

Finally, Suncoast argues that even if it violated the COBRA statute, the district court's imposition of a $20 per day penalty for a period of 18 months was an abuse of discretion. Suncoast contends that there was no evidence of bad faith or any prejudice to Scott. Specifically, Suncoast contends that Scott would have obviously

16

been unable to afford the COBRA premiums, given that he did not elect to join his wife's insurance plan at a lower premium. Under 29 U.S.C. § 1132(c)(1), the court has the discretion to penalize a violation of the notice requirement by awarding the beneficiary or participant up to $100 per day from the date of failure to give notice. The statute does not require a finding of prejudice to the plaintiff, although the Eleventh Circuit has stated that prejudice is a factor to be considered in determining the appropriate penalty. *See Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 847 (11th Cir. 1990), *abrogated on other grounds by, Murphy v. Reliance Stand. Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001). *Curry*, however, explicitly rejected treating prejudice as a prerequisite to a penalty. The penalty under § 1132 is meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary. *See Sandlin v. Iron Workers Dist. Council Pension Plan*, 716 F.Supp. 571, 574 (N.D.Ala.1988), *aff'd*, 884 F.2d 585 (11th Cir.1989) (cited with approval in *Curry*). Suncoast has not shown that the district court abused its discretion by imposing the $20 per day penalty. We therefore affirm the district court's judgment and award on Scott's COBRA claim.

For the foregoing reasons, we AFFIRM the judgment of the district court.