[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 8, 2007
THOMAS K. KAHN
CLERK

Nos. 06-14013 & 06-15016
Non-Argument Calendar

_____

D. C. Docket No. 05-61126-CV-KMM

CHERYL BERNSTEIN,
and all others similarly situated,

Plaintiff,

CHRIS KLEPPIN,

Interested Party-Appellant,

versus

BOIES, SCHILLER & FLEXNER LLP,
a professional association,

Defendant-Appellee,

STRATEGIC LEGAL RESOURCES, INC.,
a New York corporation,
STRATEGIC LEGAL RESOURCES, LLC,
a New York limited liability company,

Defendants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(June 8, 2007)**

Before BLACK, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Chris Kleppin, an attorney proceeding pro se, appeals the district court's order sanctioning him pursuant to 28 U.S.C. § 1927. Those sanctions arose from Kleppin's conduct during his representation of Cheryl Bernstein in an overtime pay dispute against Boies, Schiller & Flexner, LLP (BSF). We hold that the district court did not abuse its discretion in sanctioning Kleppin.

**I.**

The conduct for which Kleppin was sanctioned grew out of a July 14, 2005 pretrial order that shortened the time period for Kleppin and BSF's attorneys to submit a joint scheduling report. Under the local rules for the Southern District of Florida a joint scheduling report would have been due by October 22, 2005. However, under time frame set forth in the district court's July 14, 2005 order, the report was required to be filed by September 23, 2005. The pretrial order also placed on Kleppin the responsibility of delivering a copy of the order to BSF's

2

attorneys. Kleppin failed to do that.

The parties did not file a joint scheduling report before the court-imposed deadline. Although Kleppin forwarded a proposed scheduling report and a draft scheduling order to BSF's counsel on August 16, 2005, the proposed report made no mention of the September 23 deadline, and there were no other efforts to complete the report before the deadline. The only evidence that the parties even discussed the report before the deadline is Kleppin's statement that they did. Apparently, the parties began sincere negotiations over the joint scheduling report on October 11, 2005, but those negotiations became moot when they learned that on that same day the district court had dismissed the case without prejudice because of their failure to meet the September 23 deadline.

If Kleppin's errors had been limited to his failure to forward the July 2005 order and to abide its deadlines, he probably would not have been sanctioned. His campaign for sanctions began in earnest on October 19, 2005, when he filed a motion to reinstate the case. In that motion he stated that he had been sending letters and emails about the joint scheduling report to BSF's attorneys since August 16, 2005, and that he had also made numerous attempts to contact them by telephone during that same time period. He stated that they did not meet the court's original due date for filing the report because both parties mistakenly

3

believed that it was not due until October 23, 2005. In the motion to reinstate he also stated that, as required by local rules, he had attempted to contact BSF's attorneys about the motion to reinstate, but that they had failed to respond to his phone calls, emails, and letters. Therefore, he had no choice but to file the motion without first conferring with opposing counsel. Kleppin concluded his motion by certifying that he had attempted to call BSF's attorneys before filing it, but that he had not received any response. The motion did not mention, however, that the only documented communication with BSF's attorneys about it was a voice mail that Kleppin had left at 6:53 p.m. on October 19, 2005—the same day he dropped the motion into the district court's night box.

On October 31, 2005, the district court denied Kleppin's motion to reinstate, but noted that it would allow the parties to move to reopen the case after they filed a joint scheduling report. Shortly thereafter the parties resumed negotiating the terms of a joint scheduling report.

However, on November 10, 2005, Kleppin again visited the district court's night drop box, this time filing a unilateral scheduling report, a statement of reasons for the unilateral scheduling report, another motion to reopen the case, and a motion for sanctions against BSF's attorneys for failing to cooperate. He argued that he filed the second unilateral report only after BSF's showed a lack of

4

responsiveness to his good faith efforts to produce a joint scheduling report.  But the record demonstrates that the parties were actively negotiating the terms of the report on the day he filed the unilateral report in the district court's night drop box. In fact, the parties did actually file a joint scheduling report the following day, November 11, 2005.  After the joint scheduling order was filed, the district court reopened the case, denied Kleppin's motion for sanctions, and denied as moot Kleppin's motion to reopen.

On November 23, 2005, BSF filed a motion for sanctions against Kleppin pursuant to 28 U.S.C. § 1927.  The district court held a hearing on BSF's motion on January 26, 2006, with BSF seeking sanctions against Kleppin for unreasonable and vexatious conduct in connection with: (1) his failure to forward the July 2005 pretrial order; (2) his misrepresentation of the circumstances surrounding his October 19, 2005 motion to reinstate; and (3) his filing of a unilateral scheduling report and motion for sanctions on November 10, 2005, just one day before the parties filed a joint scheduling report.

In response Kleppin argued that: (1) he had not sent them a copy of the July 15, 2005 pretrial order because one of BSF's attorneys had told him that BSF had downloaded the document from the district court's PACER system; (2) the failure to meet the original deadline for submitting a joint scheduling report was due to

mutual error, because both parties mistakenly thought that the report was due on October 22, 2005—the day it would have been due under the time frame set forth by the local rules; and (3) he had attempted to confer with BSF's counsel before filing his motions on October 19 and November 10, 2005, but BSF's attorneys were unresponsive.

On February 2, 2006, the district court issued an order sanctioning Kleppin. The district court found that he had (1) not complied with the July 19, 2005 pretrial order because he never forwarded a copy of it to BSF's attorneys; (2) offered no evidence to support his assertion that defense counsel had told him that the pretrial order had been downloaded from PACER; (3) offered no documentary evidence to support his claim that he had attempted to confer with defense counsel before filing the October 19, 2005 motion to reinstate; and (4) filed the unilateral scheduling order on November 10, 2005, despite the progress that was being made on the joint scheduling order. Based on those findings, the district court determined that Kleppin had exhibited unreasonable and vexatious conduct that "multiplied the proceedings . . . and warrants sanctions under 28 U.S.C. § 1927." On May 23, 2006, an order was entered awarding $16,087.50 in fees and costs to BSF as a sanction against Kleppin.

On May 17, 2006, Kleppin filed a motion pursuant to Federal Rule of Civil

Procedure 60(b) for reconsideration of the February 2, 2006 sanctions order. As part of that motion Kleppin included documentary evidence that he did not produce at the January 26, 2006 sanctions hearing. That evidence consisted of the following: (1) phone logs that, according to Kleppin, constitute evidence that he attempted to confer with BSF's attorneys about the joint scheduling order before the September filing deadline expired, and before he filed his motion to reinstate on October 19, 2005; (2) an email allegedly demonstrating that BSF had mis-calendared the deadline for filing the joint scheduling report; (3) the message pad of Kleppin's secretary, which allegedly shows he attempted to confer with BSF's attorneys before he filed his October 19 motion to reinstate the case, and his November 10 motion to reopen the case; (4) an affidavit from Kleppin's secretary stating that if anyone had called Kleppin at his office about the scheduling report, she would have recorded it on the message pad; and (5) a statement from Kleppin that BSF had refused to grant him access to its billing and PACER download records. Kleppin asserts that access to those BSF records would have allowed him to establish that BSF had indeed downloaded the district court's July 2005 pretrial order from PACER.

Kleppin concedes that he failed to produce these items as evidence at his sanctions hearing. In his motion to reconsider, Kleppin asserted that he did not

bring that evidence to the sanctions hearing, because he thought that he would be able to adequately defend himself against BSF's motion for sanctions by questioning the two BSF attorneys with whom he had negotiated the scheduling report. To Kleppin's surprise, those attorneys did not come to the hearing, but instead another attorney who had been working on the case represented BSF. The two attorneys who Kleppin assumed would be at the hearing did, however, submit declarations pursuant to 28 U.S.C. § 1746 stating that they had never told Kleppin that any attorney from BSF had downloaded the July 2005 pretrial order from PACER.

Before the district court ruled on the merits of Kleppin's motion to reconsider, the parties reached a settlement agreement on the underlying litigation. As part of that agreement, the parties petitioned the district court to vacate all prior orders in the case, including the order sanctioning Kleppin. In addition, BSF agreed to waive the monetary sanctions against Kleppin and further agreed not to oppose any potential appeal that Kleppin might bring on the sanctions issue.

On July 5, 2006, the district court tentatively approved the terms of the settlement agreement, except for the provision that the sanctions against Kleppin be vacated. The district court also denied as moot all pending motions in the case, including Kleppin's motion for reconsideration.

8

## II.

### A.

Kleppin now appeals both the district court's February 2, 2006 order, which imposed the sanctions against him, and the district court's July 5, 2006 order, which denied as moot his motion for reconsideration. We will address his appeal of the February 2, 2006 order first, and in doing so will consider only the evidence that was before the court when it entered that order.

Kleppin disputes several of the district court's findings. He argues that his failure to forward the July 2005 pretrial order to BSF's counsel was simply a mistake on his part and that it did not contribute to the parties' failure to file the joint scheduling report before the court-imposed deadline, because both of the parties erroneously assumed that the report was not due until October 23, 2005. He further maintains that, contrary to the district court's finding, he was told by an attorney for BSF that he did not need to forward a copy of the pretrial order to BSF's counsel because BSF had already downloaded the order from PACER.

Regarding the motion to reinstate the case that he filed on October 19, 2005, Kleppin argues that the district court incorrectly determined that he had not attempted to confer with counsel for BSF. To support that argument, Kleppin has submitted telephone records that he did not submit to the district court during his

sanctions hearing. According to Kleppin those telephone records demonstrate that he did not misrepresent the circumstances surrounding the filing of the October 19, 2005 motion to reinstate.

Kleppin also attacks the district court's finding that he failed to properly confer with opposing counsel before he filed a unilateral scheduling order on November 10, 2006. As evidence he points to a letter he drafted on November 4, 2005, explaining his intent to file a unilateral order if a joint report was not agreed upon by November 7, 2005.

Finally, Kleppin argues that the district court placed an improper burden of proof upon him at the sanctions hearing. In his brief he asserts that the district court simply accepting BSF's allegations and declarations as true, while rejecting his oral explanations and demanding documentary evidence to support his defenses.

### B.

We review a district court's decision regarding sanctions for an abuse of discretion. See Byrne v. Nezhat, 261 F.3d 1075, 1105 (11th Cir. 2001). A court abuses its discretion when it fails to apply the correct legal standard, does not follow correct procedures in making the determination, or bases an award upon factfindings that are clearly erroneous. Cordoba v. Dillard's, Inc., 419 F.3d 1169,

10

1180 (11th Cir. 2005).

A district court can sanction any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "We have consistently held that an attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180, 1190 (11th Cir. 2006) (quoting Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991)).

> [I]t is clear from the statutory language and the case law that for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct. The term "unreasonably" necessarily connotes that the district court must compare the attorney's conduct against the conduct of a "reasonable" attorney and make a judgment about whether the conduct was acceptable according to some objective standard. The term "vexatiously" similarly requires an evaluation of the attorney's objective conduct.

Id. (citations omitted). "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." Id. at 1192. However, "negligent conduct, standing alone, will not support a finding of bad faith under § 1927—that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney." Id. at 1193.

11

There are four reasons why the district court did not abuse its discretion by finding that Kleppin's conduct had unreasonably multiplied the proceedings in this case. First, Kleppin mischaracterized his attempts to confer with opposing counsel before filing his October 19, 2006 motion to reinstate. In that motion he wrote that he had fulfilled the local rules' requirement to attempt to confer with counsel for BSF before filing the motion and that he had not received a response. Yet, the only evidence of any attempt to confer with BSF that was before the district court at the sanctions hearing is a voice mail that Kleppin left at 6:53 p.m. on the same night he filed the motion in the district court's drop box.

Second, Kleppin filed a unilateral scheduling report on November 10, 2005, alleging that BSF's counsel was not cooperating in the preparation of a joint scheduling order. But as the district court found, the parties were actively discussing the scheduling report when Kleppin made his unilateral filing. In fact, the parties filed a joint scheduling report the very next day after Kleppin's "after hours" filing of the unilateral scheduling report. And Kleppin did not withdraw his unilateral report or its accompanying motion for sanctions.

Third, other than the draft proposed scheduling report that he forwarded to BSF on August 15, 2005, Kleppin offered no evidence to demonstrate that he had attempted to work with BSF's counsel to devise a joint scheduling report before

12

the September 23, 2005 deadline passed.  Even if we credit Kleppin's assertion that he simply overlooked the deadline set forth in the July 2005 pretrial order, it was reckless on his part to do so.  And fourth, despite the fact that the district court ordered him to forward a copy of the July 2005 pretrial order to BSF, Kleppin never complied with that order.  Regardless of what he was told by BSF's attorneys, he could and should have simply complied with the district court's instructions by sending a copy of the order to them by mail or by fax.

Given the evidence that was submitted to the district court at the sanctions hearing, Kleppin's argument that the court did not require BSF to carry its burden of proof is without merit.  BSF pointed to Kleppin's numerous filings and offered unsworn declarations, which Kleppin did not rebut with substantive evidence. Because of Kleppin's misleading and unnecessary filings, both BSF and the district court were forced to spend additional time and resources on this case.  Therefore, we cannot say that the district court abused its discretion in sanctioning Kleppin.

**III.**

We turn now to the second issue Kleppin raises in this appeal: the district court's denial of his motion to reconsider.  Kleppin contends that the court erred in denying his motion to reconsider because (1) the evidence he submitted with that motion establishes that he should not have been sanctioned and (2) the attorney

13

who represented BSF at the sanctions hearing misled the court as to the scope of her involvement in the case and made other false statements about Kleppin's conduct.

We review the denial of a motion to reconsider only for an abuse of discretion. See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1231 (11th Cir. 2002). We "may affirm the district court 'on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.'" Rowell v. BellSouth Corp., 433 F.3d 794, 797–98 (11th Cir. 2005) (citation and quotation marks omitted).

The problem with Kleppin's second contention is one of timing. Even if we assume that the district erred when it denied Kleppin's motion for reconsideration as moot, he has "failed to allege, much less show," that any of the evidence that he submitted with his motion to reconsider—for instance, his telephone records and the affidavit of his secretary—was either unavailable or not discussed during his sanctions hearing. Mays v. United States Postal Service, 122 F.3d 43, 46 (11th Cir. 1997) ("[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion."). On the contrary, the evidence was available, but Kleppin did not collect

14

and produce it. He knew what the sanctions hearing was about and knew what evidence could provide the best defense on his behalf. Furthermore, a review of the sanctions hearing transcript indicates that the statements by BSF's attorney that she had been involved with this case from the beginning were not misrepresentations, as alleged by Kleppin. For those reasons, we cannot say that the district court abused its discretion.

**AFFIRMED.**